1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TRUBY PETE, KATHY MCGATLIN,
and SHEILA GAVIGAN,

                Plaintiffs,

    v.

TACOMA SCHOOL DISTRICT NO. 10
d/b/a TACOMA PUBLIC SCHOOLS, et
al.,

                Defendants.

CASE NO. 3:16-cv-05403-RJB

ORDER ON DEFENDANTS'
MOTION TO DISMISS PURSUANT
TO FED. R. CIV. P. 12(B)(6)

       This matter comes before the Court on Defendants' Motion to Dismiss Pursuant to Fed.

R. Civ. P. 12(b)(6). Dkt. 6. The Court has considered the motion, Defendants' request for judicial

notice in support of their motion (Dkt. 7), Plaintiffs' Response (Dkt. 10), Defendants' Reply

(Dkt. 12), and the remainder of the file herein. Defendants' motion should be granted in part and

denied in part.

### BACKGROUND

       The Complaint is lengthy. *See* Dkt. 1-2. The Complaint is sixty-three pages, plus another

sixty-four page Appendix, and it is hardly a "short and plain statement" as contemplated by Fed.

1  R. Civ. P. 8 and WA CR8. For the sake of clarity and brevity, specific factual allegations are

2  discussed with relation to each cause of action. The case stems from a conflict between

3  Plaintiffs, employed as counselors (Pete and McGatlin) and a teacher (Gavigan), and Defendants,

4  the Tacoma School District ("the District"), along with administrators, Superintendent Santorno,

5  Principal Erwin, Assistant Principal Burke, HR Director Elijah, Assistant HR Superintendants

6  Rosellini and Nolan, and General Counsel McMinimee (the "individually named defendants").

7       The Complaint alleges eight causes of action. The First Cause of Action, brought under

8  42 U.S.C. § 1983, alleges constitutional violations of Plaintiffs' rights to free speech and to

9  substantive and procedural Due Process. Dkt. 1-2 at ¶¶5.1-5.58. The Complaint enumerates

10 twenty-two alleged free speech deprivations. *Id*. at ¶¶5.36-5.44. The Complaint alleges

11 substantive Due Process violations of Plaintiffs' property interest in continued employment and

12 Plaintiffs' liberty interest in their good names and reputations. *Id*. at ¶¶5.46, 5.47. The Complaint

13 alleges that Defendants violated Plaintiffs' procedural Due Process on a number of grounds:

14 refusing to acknowledge Plaintiffs as whistleblowers, suing Plaintiffs "to invade their attorney

15 client privilege and confidential communications," discriminating against Plaintiffs for relying

16 on independent counsel rather than counsel from their union, accusing Plaintiffs of falsely

17 stealing school records and disclosing confidential records in the press, criticizing and unfairly

18 scrutinizing Plaintiffs' medical documentation for leave requests, and unfairly taking disciplinary

19 action against Plaintiffs. *Id*. at ¶¶5.48-5.53.

20      The First Cause of Action alleges claims, organized as follows: "Claims Against

21 Individuals in Individual Capacity," "Claims Against District Based on Final Policy Maker,"

22 "Claims Against Pierce County Based on Ratification," Claims Against District Based on

23

24

ORDER ON DEFENDANTS' MOTION TO
DISMISS PURSUANT TO FED. R. CIV. P.
12(B)(6)- 2

1   Official Policy, Practice, or Custom," and "Claims Against District Based on a Failure to

2   Supervise and Train." Dkt. 1-2 at ¶¶5.15-5.35.

3       The Complaint alleges seven state law causes of action: abuse of process, invasion of

4   privacy/false light/defamation, constructive discharge in violation of public policy, breach of

5   contract, outrage, discrimination on the basis of age, disability, and race in violation of the

6   Washington Law Against Discrimination (WLAD), and violations of the Public Records Act

7   (PRA).  Dkt. 1-2 at ¶¶5.59-5.120.

8                     **REQUEST FOR JUDICIAL NOTICE**

9       The request for judicial notice is supported by the law and the facts and should be

10  granted.

11                    **STANDARD FOR MOTION TO DISMISS**

12      Fed. R. Civ. P. 12(b) motions to dismiss may be based on either the lack of a cognizable

13  legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  *Balistreri*

14  *v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990).  Material allegations are taken

15  as admitted and the complaint is construed in the plaintiff's favor.  *Keniston v. Roberts*, 717 F.2d

16  1295 (9th Cir. 1983).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not

17  need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement

18  to relief requires more than labels and conclusions, and a formulaic recitation of the elements of

19  a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65

20  (2007)(*internal citations omitted*).  "Factual allegations must be enough to raise a right to relief

21  above the speculative level, on the assumption that all the allegations in the complaint are true

22  (even if doubtful in fact)."  *Id*. at 1965.  Plaintiffs must allege "enough facts to state a claim to

23  relief that is plausible on its face."  *Id*. at 1974.

24

1         If a claim is based on a proper legal theory but fails to allege sufficient facts, the plaintiff

2    should be afforded the opportunity to amend the complaint before dismissal. *Keniston v. Roberts*,

3    717 F.2d 1295, 1300 (9th Cir. 1983). If the claim is not based on a proper legal theory, the claim

4    should be dismissed. *Id*. "Dismissal without leave to amend is improper unless it is clear, upon

5    de novo review, that the complaint could not be saved by any amendment." *Moss v. U.S. Secret*

6    *Service,* 572 F.3d 962, 972 (9th Cir. 2009).

7    **DISCUSSION**

8    **1.  Constitutional Violations**

9         To state a civil rights claim under 42 U.S.C. § 1983, a plaintiff must set forth the specific

10   factual bases upon which she claims each defendant is liable. *Aldabe v. Aldabe*, 616 F.2d 1089,

11   1092 (9th Cir. 1980). Vague and conclusory allegations of official participation in civil rights

12   violations are not sufficient to support a claim under § 1983. *Ivey v. Board of Regents*, 673 F.2d

13   266 (9th Cir. 1982). A complaint must allege that (1) the conduct complained of was committed

14   by a person acting under color of state law, and that (2) the conduct deprived a person of a right,

15   privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v.*

16   *Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S.

17   327 (1986).

18        Government actors may be excepted from § 1983 claims if they are shielded by qualified

19   immunity. "Qualified immunity "represents the norm" for government officials exercising

20   discretionary authority[.]" *Lacey v. Maricopa County*, 693 F.3d 896, 915 (9th Cir. 2012).

21   Analyzing qualified immunity is a two-pronged test, considering (1) whether the conduct

22   violated a constitutional right, and (2) whether the right was clearly established. *Saucier v. Katz*,

23   533 U.S. 194, 201 (2001).

24

1    Defendants makes several primary arguments: (1) the statute of limitations bars recovery

2  for acts outside of three-years, (2) the Complaint does not allege a plausible free speech

3  violation, because it does not allege a sufficient adverse conduct; (3) the Complaint does not

4  allege a plausible Due Process claim because none of the allegations constitute "deprivations" of

5  constitutional magnitude; and (4) even if Defendants' conduct resulted in a constitutional

6  violation, Defendants' alleged conduct is discretionary and not "clearly established."

7    Plaintiffs' Response is convoluted and aimlessly wanders. The Court will not attempt to

8  summarize Plaintiffs' arguments.

9    Because the Court should dismiss without prejudice and with leave to amend four of the

10  five sets of claims, *see below*, assessing qualified immunity as to the remaining § 1983 claims,

11  "Claims Against District Based on Official Policy, Practice, or Custom," is premature. Such an

12  assessment, if appropriate, should follow amendment and discovery. The parties should first

13  focus their discovery on issues of qualified immunity.

14    a.   *"Claims Against Officials in Individual Capacity"*

15    The Complaint alleges that "the acts of the named defendant officials deprived

16  [Plaintiffs] of their First Amendment and Fourteenth Amendment (Due Process) rights . . . as

17  explained further below." Dkt. 1-2 at ¶5.15. The subsequent paragraphs allege that the

18  individually named defendants "directed their subordinates in the acts and failures to act" and

19  "knew or reasonably should have known that their subordinates were engaging in these acts . . .

20  [and] failed to act to prevent" their actions. *Id*. at ¶¶5.16-5.19. The paragraphs "further below"

21  do not articulate a plausible theory of relief, and the Court should not be forced to construct one

22  on Plaintiffs' behalf from the factual allegations. Defendants' motion should be granted as to

23

24

ORDER ON DEFENDANTS' MOTION TO
DISMISS PURSUANT TO FED. R. CIV. P.
12(B)(6)- 5

1   these claims. They should be dismissed without prejudice, and Plaintiffs should be given leave to

2   amend.

3       b.   *"Claims Against District Based on Final Policymaker"*

4       According to the Complaint, "the individually named defendant officials . . . engag[ed] in

5   a series of retaliatory acts creating a hostile workplace and leading to the constructive discharge

6   and other harm." Dkt. 1-2 at ¶5.20. The same officials "had final policy making authority from

7   defendant district concerning these acts . . . [and] were acting as final policymaker for defendant

8   district." *Id*. at ¶¶5.21, 5.22. These claims resemble a theory of municipal liability, but the

9   Complaint makes no effort to connect this theory to specific conduct. Again, the Court will not

10  invent a plausible claim of relief. Defendants' motion should be granted as to these claims.  They

11  should be dismissed without prejudice, and Plaintiffs should be given leave to amend.

12      c.   *"Claims Against Pierce County[1] Based on Ratification"*

13      The Complaint alleges these "claims" in a single paragraph that reads, "The school

14  district ratified the defendant officials [*sic*] acts and the basis for it, that is, the district knew of

15  and specifically approved of the adverse actions taken to harm the plaintiffs." Dkt. 1-2 at ¶5.23.

16  This is insufficient. Defendants' motion should be granted as to these claims. They should be

17  dismissed without prejudice, and Plaintiffs should be given leave to amend.

18      d.   *"Claims Against District Based on Official Policy, Practice, or Custom"*

19      Relating to the alleged free speech deprivation, the Complaint alleges that "the district

20  has a permanent, widespread, and well-settled practice or custom . . . of failing to conduct

21  independent investigation of discrimination complaints and whistleblower complaints" and that

22  _____

23      [1] Pierce County is not a named defendant, but judging by the paragraph following the
    header, which refers only to "the school district," the Court infers that Plaintiffs intended to
24  allege a claim against the District. *See* Dkt. 1-2 at ¶5.23.

ORDER ON DEFENDANTS' MOTION TO
DISMISS PURSUANT TO FED. R. CIV. P.
12(B)(6)- 6

1   Defendants failed to do so in this case. Dkt. 1-2 at ¶5.26. Elsewhere, the Complaint describes the

2   content, timing, and response by the District to Plaintiffs' whistleblower complaint. *Id.* at ¶¶4.62-

3   4.66. This contains a plausible basis for relief. The issue of whether Plaintiffs' alleged

4   whistleblower complaint implicated free speech concerns may depend on whether that complaint

5   was made by Plaintiffs in their personal or employment capacity, but that is an issue to be

6   resolved on a motion for summary judgment. *See Coomes v. Edmonds Sch. Dist. No. 15*, 816

7   F.3d 1255, 1260 (9th Cir. 2016); *Garcetta v. Ceballos*, 547 U.S. 410 (2006).

8           Defendants' motion should be denied as to these claims.

9           *e.   "Claims Against District Based on a Failure to Supervise and Train"*

10          The Complaint alleges that "the defendant district was deliberately indifferent to the

11  obvious consequences of its failure to supervise and train . . . which caused the [constitutional]

12  deprivation."  Dkt. 1-2 at ¶¶5.31, 5.32. The Complaint further alleges a failure to supervise and

13  train employees of policies for whistleblower, non-discrimination, and public records policies

14  and procedures. *Id.* at ¶5.35.  The claims are not plausible, because while the Complaint may

15  allege the "what" of the District's failure to train, the Complaint fails to articulate the "how," by

16  failing to articulate how the District acted with deliberate indifference. *See City of Canton v.*

17  *Harris*, 489 U.S. 378, 392 (1989). Defendants' motion should be granted as to these claims.

18  They should be dismissed without prejudice, and Plaintiffs should be given leave to amend.

19  **2.  Abuse of Process**

20          "The great majority of legal authorities concur" that abuse of process is "a matter of

21  bringing action A to accomplish B." *Batten v. Abrams*, 28 Wn. App. 737, 745 (1981). To allege a

22  claim for abuse of process, a plaintiff must plead (1) the existence of an ulterior purpose to

23

24

1   accomplish an object not within the proper scope of the process, and (2) an act in the use of legal

2   process not proper in the regular prosecution of the proceedings. *Id.*

3         The Complaint alleges that Defendants filed a Family Education Rights and Privacy Act

4   (FERPA) lawsuit against Plaintiffs "for purposes of violating their First Amendment rights and

5   to deter their whistleblower activities." Dkt. 1-2 at ¶5.59. The Complaint further alleges that

6   Defendants "used their lawsuit to attempt to invade . . . privileged communications with their

7   attorney" and that Defendants "repeatedly demanded access . . . even when such relief was

8   denied and where there is no such action." *Id.* This may be a plausible claim for relief, but it

9   should have been alleged by Plaintiffs as a counterclaim in the FERPA lawsuit and is not

10  properly brought before this Court.

11        To this Court's understanding, abuse of process claims are appropriately brought as

12  counterclaims, where one party is using an action "to compel the adverse party to do some

13  collateral thing which he could legally compelled to do" were it not for the action. *Fite v. Lee*, 11

14  Wn.App. 21, 28 (1974). *See, e.g., Saldivar v. Momah*, 145 Wn. App. 365 (2008), *Hough v.*

15  *Stockbridge*, 152 Wn. App. 328 (2009); *Saldivar v. Momah*, 145 Wn. App. 365 (2008); *Batten v.*

16  *Abrams*, 28 Wn.App. 737 (1981). The Court is aware of no authority for the proposition that a

17  party to a lawsuit, who could have—but did not—allege an abuse of process counterclaim, can

18  later allege an abuse of process claim arising within a case in another court.

19        As to this cause of action, Defendants' motion should be granted. It should be dismissed

20  with prejudice.

21  **3.   Invasion of Privacy/False Light/Defamation**

22        A false light claim arises when a defendant (1) publicizes a matter that places another in a

23  false light, (2) the false light would be highly offensive to a reasonable person, and (3) the

24

ORDER ON DEFENDANTS' MOTION TO
DISMISS PURSUANT TO FED. R. CIV. P.
12(B)(6)- 8

defendant knew of or recklessly disregarded its falsity. *Eastwood v. Cascade Broad. Co.* 466 Wn.2d 466, 470–71 (1986). Similarly, pleading a defamation claim requires falsity, an unprivileged communication, fault, and damages. *Mohr v. Grant*, 153 Wn.2d 812, 822 (2005), *Corey v. Pierce Cty.*, 154 Wn. App. 752, 762 (2010). Invasion of privacy claims are derived from the Restatement (Second) of Torts § 652D (1977), which states: "One who gives publicity to a matter concerning the private life of another is subject to liability . . . if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." *Reid v. Pierce Cty.*, 136 Wn.2d 195, 205 (1998).

Defendants argue that the Complaint lacks specificity about what, when and to whom Defendants published false statements. Defendants argue further that to the extent the Complaint alleges publication of statements, the statements articulated are opinions or conclusions, not facts.

Plaintiffs point to the "patently false factual publication that the [Plaintiffs] shared confidential student records with the media. They did not." Dkt. 10 at 18. Plaintiffs also point to negative teacher performances evaluations disclosed to the media and academic waivers issued by Assistant Principal Burke, which were issued "due to counselor errors" and the "disservice received by this student in academic advising." *Id*. *See* Dkt. 1-2 at 100.

Because Plaintiffs have made sufficiently-pleaded factual allegations, the Court assumes their veracity and considers their plausibility. *Iqbal*, 556 U.S. at 664. The Complaint alleges that Defendants published statements to the news media, including the "the controversial 2014 Burke evaluations of Ms. Gatlin and Ms. Pete to the News Tribune . . . but failed to disclose any of the requested positive evaluations," under circumstances where Defendants knew the evaluations were false. Dkt. 1-2 at ¶¶4.81, 5.63, 5.69. The Complaint alleges a plausible theory with

1    sufficient specificity for either a defamation, false light, or invasion of privacy claim. And

2    Defendant has not provided ample authority to show evaluations are always opinion, with no

3    factual basis. As to this cause for relief, Defendants' motion should be denied.

4    **4.   Constructive Discharge in Violation of Public Policy**

5           "A constructive discharge occurs when, looking at the totality of the circumstances, 'a

6    reasonable person in [the employee's] position would have felt that he was forced to quit because

7    of intolerable and discriminatory working conditions.'" *Sanchez v. City of Santa Ana*, 915 F.2d

8    424, 431 (9th Cir.1990), quoting *Watson v. Nationwide Ins. Co.,* 823 F.2d 360, 361 (9th Cir.1987)

9    (inner quotations omitted). *Sneed v. Barna*, 80 Wn.App. 843 (1996). Whether the working

10   conditions were sufficiently intolerable and discriminatory to justify resignation is ordinarily a

11   question of fact for the jury. *Thomas v. Douglas,* 877 F.2d 1428, 1434 (9th Cir.1989).

12          Defendants argue that the Complaint is insufficient as a matter of law because all three

13   plaintiffs remain employed by the District and continue to receive benefits. Defendants also

14   argue that the conduct alleged, even if true, does not rise to the level of "intolerable and

15   discriminatory" sufficient for a reasonable person to resign.

16          Plaintiffs argue that as to McGatlin, who is on medical leave and has applied for long-

17   term disability, the District has not promised to return her to work with full benefits (that the

18   District denied her when on medical leave), so she has been constructively discharged. As to

19   Gavigan and Pete, Plaintiffs argue that although they are still employed by the District, they have

20   been moved to different schools, receive less income and benefits, and are forced to endure

21   ongoing harassment.

22          *Campbell v. State*, 129 Wn. App. 10 (2005) addresses the dispositive issue to resolving

23   Defendants' motion. In *Campbell*, the Washington Court of Appeals affirmed summary

24

1   judgment of a constructive discharge claim in favor of a public university employer because the

2   employee did not resign from a position, but had instead been "reverted . . . from her secretarial

3   position to her prior custodial job." *Campbell*, 129 Wn. App. at18, 23-24. When the employee

4   "permanently left her position as secretary . . . she did not leave the employment[.]" *Id*. citing to

5   *Korslund v. Dyncorp Tri-Cities Servs., Inc.*, 121 Wn.App. 295, 315 (2004). In *Korslund*, 156

6   Wn.2d 168 (2005), the court analyzed whether a constructive discharge claim could be brought

7   when an employee left a job for medical leave without quitting or resigning. *Id*. at 178-80.

8   Finding in the affirmative, the court reasoned that constructive discharge is actionable "if the

9   employer makes working conditions so intolerable that the employee is forced to leave the

10  workplace for medical reasons rather than quit or resign." *Id*. at 179, citing to *White v.*

11  *Honeywell, Inc.,* 141 F.3d 1270 (8th Cir.1998).

12          Applying *Campbell* and *Korslund* to this case, the constructive discharge cause of action

13  should be dismissed as to Pete and Gavin, who are both still employed by the District. *See* Dkt.

14  1-2 at ¶¶3.1-3.3, 5.80. The common thread of these discharge cases is that whether an employee

15  quits, resigns, or leaves for medical reasons, the employee *is no longer actively employed*, which

16  is not what the Complaint alleges as to Pete and Gavin. Demotion does not constitute

17  constructive discharge. As to McGatlin, who "has been forced to take medical leave," *Id*. at

18  ¶5.80, the Complaint states a plausible claim for relief, where Defendants have "failed to make

19  reasonable accommodations in violation of non-discrimination policies and procedures." *Id*. at

20  ¶5.78. The extent to which McGatlin still receives benefits and wages and is eligible for future

21  employment may or may not provide fodder for summary judgment, but based on the pleadings

22  Defendants' motion should be denied.

23

24

1    As to this cause of action, Defendants' motion should be denied, in part, as to McGatlin

2 and granted, in part, as to Pete and Gavin. As to Pete and Gavin, the cause of action should be

3 dismissed.

4 **5.  <u>Breach of Contract</u>**

5    To bring a cause of action for breach of contract, a plaintiff must allege the existence of a

6 valid and enforceable contract, the plaintiff's rights and defendant's obligations under the

7 contract, defendant's violation of the contract, and damage to the plaintiff. *Citoli v. City of*

8 *Seattle*, 115 Wn. App. 459, 476 (2002), citing to 17B C.J.S. Contracts § 640 p. 357 (1999).

9    Defendants argue that although the Complaint alleges the breach of an employment

10 contract with the District, the Complaint does establish that a contract existed, because "on

11 review . . . it becomes clear that Plaintiffs do not rely on any individual employment contract, but

12 on allegations of breach of policies, procedures, and state laws [generally] applicable[.]" Dkt. 6

13 at 17. Defendants' employee handbook, Defendants contend, did not create any contractual

14 obligations, where Plaintiffs were not named and the handbook did not particularize job

15 responsibilities and work hours, and generally-applicable policies and state laws similarly fail for

16 the same reason. The cause of action also fails, Defendants argue, because even in Plaintiffs'

17 Response, Plaintiffs fail to specify what promises Defendants actually breached.

18    Plaintiffs distinguish Defendants' authority, *DePhillips v. Zolt Constr. Co.*, 136 Wn.2d

19 26, 29 (1998), where the Washington Court of Appeal affirmed dismissal of a breach of contract

20 claim because an employer handbook did not give rise to contractual obligations, by arguing that

21 *DePhillips* is a statute of limitations case that did not overrule common law on implied contracts,

22 and that *DePhillips* applies to "at will" employees working for a private employer, whereas

23 Plaintiffs are civil sector employees. Plaintiffs also argue that the Complaint alleges specific

24

1  promises breached, "to include . . . failure to investigate [Plaintiffs'] whistleblower and retaliation

2  complaints, failure to appoint an administrative law judge, failure to protect [Plaintiffs] from

3  retaliation, and engaging in retaliation." Dkt. 10 at 20.

4      The Complaint alleges that Plaintiffs "work for the defendant district subject to an

5  employment contract" and that "Defendants have caused the forced separation of Mrs. McGatlin

6  without just cause in violation of these contract terms[.]"  Dkt. 1-2 at ¶¶5.81, 5.85. The

7  Complaint also alleges that, in exchange for consideration, Plaintiffs relied on the promise of

8  Defendants to provide for Plaintiffs, who are whistleblowers, "specific administrative remedies

9  to include prompt independent investigation, appointment of an administrative law judge, and

10  corrective action." *Id.*  at ¶¶5.86-5.92. On these facts, the Complaint states a claim for breach of

11  contract.

12      Defendants' argument that the District's employer handbook or policies cannot give rise

13  to contractual obligations is unavailing. The Complaint alleges the existence of an employment

14  contract, but even if the employment contract is co-extensive with the employer handbook or

15  employment policies, in the context of employment contracts, "employers can control the work

16  relationship," so "the employer's act in issuing an employee policy manual can lead to

17  obligations that govern the employment relationship." *Thompson v. St. Regis Paper Co.*, 102

18  Wn. 2d 219, 229 (1984). Based on the pleadings, this argument should be rejected.

19      As to this cause of action, Defendants' motion should be denied.

20  **6.  <u>Outrage</u>**

21      To establish a tort of outrage claim, a plaintiff must show (1) extreme and outrageous

22  conduct, (2) intentional or reckless infliction of emotional distress, and (3) severe emotional

23  distress on the part of the plaintiff. *Dicomes v. State,* 113 Wn.2d 612, 630 (1989). Outrageous

24

1    conduct is that "which the recitation of the facts to an average member of the community would

2    arouse his resentment against the actor and lead him to exclaim 'Outrageous!' " *Browning v.*

3    *Slenderella Sys.,* 54 Wn.2d 440, 448 (1959) (quoting Restatement of Torts § 46(g) (Supp.1948)).

4        Defendants contend that the Complaint fails to state a claim because none of the alleged

5    acts by Defendant are "outrageous," but rather were acts well within Defendants' discretion.

6        Plaintiffs argue that Defendants have ignored the Complaint's description of Defendants'

7    conduct, including Defendants' initiation of a false lawsuit against Plaintiffs and Defendants'

8    publicized false accusations of Plaintiffs' lack of professionalism and criminal misconduct.

9        The Complaint alleges that "in retaliation for [Plaintiffs'] reports to the media and to the

10    district that Lincoln High School was providing preferential services to select students,

11    manipulating graduation rates, and otherwise creating a second tier educational system for . . .

12    underachieving minorities[,]" Defendants sued Plaintiffs and published false statements about

13    Plaintiffs in the media. Dkt. 1-2 at ¶¶5.95, 5.96. Defendants' conduct allegedly resulted in

14    emotional distress to Plaintiffs. *Id.* at ¶5.101. This is a plausible claim for relief.

15        As to this cause of action, Defendants' motion should be denied.

16    **7.   Discrimination in Violation of the WLAD**

17        The WLAD prohibits employers from discriminating based on age, disability, and race,

18    *inter alia*. RCW 49.60.180. The prima facie showing for age discrimination requires facts

19    sufficient to allege: 1) that the employee was within the statutorily protected age group, (2) was

20    discharged, (3) was doing satisfactory work, and (4) was replaced by a younger person.

21    *Grimwood v. Univ. of Puget Sound, Inc.*, 110 Wn. 2d 355, 362 (1988). To establish a prima facie

22    claim of disability discrimination, the employee must show that she: (1) has a disability, (2) can

23    perform the essential functions of the job, and (3) was not reasonably accommodated. *Dedman v.*

24

*Washington Pers. Appeals Bd.*, 98 Wn. App. 471, 478 (1999). Claims for disparate treatment based on race have four elements: (1) the employee is a member of a protected class, (2) the employee is qualified for the employment position, (3) the employee suffered an adverse employment action, and (4) similarly situated employees not part of the employee's protected class received more favorable treatment. *Kang v. U. Lim. Am., Inc.*, 296 F.3d 810, 818 (9th Cir.2002). The prima facie claim for discrimination based on a hostile work environment has four elements: (1) harassment was unwelcome, (2) harassment was because of a protected class, (3) the harassment affected the terms and conditions of employment, and (4) the harassment is imputable to the employer. *Glasgow v. Ga-Pac. Corp.*, 103 Wn.2d 401, 406-07 (1985).

Defendants argue that the Complaint fails to establish any connection between Defendants' conduct and the alleged protected statuses of gender (all Plaintiffs), age (all Plaintiffs), race (Pete) and disability (Gavigan). Defendants contend that the Complaint contains only bare conclusions of discriminatory conduct, does not allege sufficient facts for a hostile work environment, fails to allege similarly situated people for a disparate treatment claim, and fails to articulate what accommodations the District failed to make as to any disability claim.

Plaintiffs argue that the Complaint alleges: (1) prima facie evidence of age discrimination because they have all been replaced by younger employees under the age of 40; (2) denial of reasonable accommodation to Gavigan; and (3) a hostile workplace where Plaintiffs were asked to retire, unlike younger employees. Plaintiffs describe the "adverse actions" that Defendants have taken, including demoting Pete and Gavigan and transferring them to different schools, and insisting that McGatlin resign and removing her from leadership positions. Plaintiffs also engage in burden shifting analysis—appropriate for summary judgment pleadings, not a motion to

1    dismiss—arguing that Defendants have not met their burden to show legitimate reasons for their

2    conduct.

3          The problem with this cause of action is twofold: lack of specificity, and lack of clarity.

4    In just seven short paragraphs, *see* ¶¶5.102-5.108, Plaintiffs broadly allege discrimination in

5    violation of the WLAD for failure to accommodate a disability (McGatlin), disparate impact

6    based on race (Gavigan), age discrimination (all Plaintiffs), and a hostile work environment (all

7    Plaintiffs), and incorporating the Complaint's factual allegations is of minimal utility. The

8    Complaint alleges that "the district has failed to accommodate Mrs. Gavigan  . . . [and] to engage

9    in an interactive process with her," Dkt. 1-2 at ¶5.106, and incorporating facts alleged, the

10   Complaint alleges that "Ms. Gavigan sent to defendant McMinimee a letter formally request

11   ADA accommodation [but] the defendants responded claiming she did not have a disability." *Id.*

12   at ¶4.110. However, the Complaint nowhere alleges what Gavigan's disability is or what

13   accommodation the District failed to take, which is insufficient. *See Dedman v. Washington*

14   *Pers. Appeals Bd.*, 98 Wn. App. 471, 478 (1999).

15         Plaintiffs' Response brief makes no mention of race discrimination as to Pete and appears

16   to abandon that claim to the extent it may have been alleged. The Complaint alleges that

17   Plaintiffs are all over the age of forty and were replaced by others under the age of forty, Dkt. 1-

18   2 at ¶5.104, but the Complaint does not connect that allegation to the factual circumstances, and

19   the Court will not invent a plausible theory on Plaintiffs' behalf. Finally, the Complaint fails to

20   specify which of the protected classifications were the discriminatory basis for the hostile work

21   environment and thus apparently alleges that discrimination occurred as to all Plaintiffs by all

22   Defendants based on all of the alleged protected classes, *Id*. at ¶5.107, which is infeasible. *Iqbal*

23   and *Twombly* require more.

24

ORDER ON DEFENDANTS' MOTION TO
DISMISS PURSUANT TO FED. R. CIV. P.
12(B)(6)- 16

1    The Complaint fails to state a cause of action for violations of the WLAD, and Plaintiffs

2  should be given leave to amend. Should Plaintiffs elect to amend, Plaintiffs are strongly

3  encouraged to allege their WLAD cause of action as discrete claims between defined parties for

4  specifically-described conduct.

5    As to this cause of action, Defendants' motion should be granted and the cause of action

6  dismissed without prejudice with leave to amend.

7  **8.   Violations of the Public Records Act (PRA)**

8    The PRA is a strongly worded mandate for broad disclosure of public records. *Burt v.*

9  *Dep't of Corr.,* 168 Wn.2d 828, 832 (2010) (quoting *Soter v. Cowles Publ'g Co.,* 162 Wn.2d 716,

10  731 (2007)). It stands for the proposition that "full access to information concerning the conduct

11  of government on every level must be assured as a fundamental and necessary precondition to

12  the sound governance of a free society." *Progressive Animal Welfare Soc'y v. Univ. of Wash.,*

13  125 Wn.2d 243, 251(1994) (*PAWS* ); RCW 42.17A.001(11). Agencies are required to disclose

14  any public record on request unless it falls within a specific, enumerated exemption. RCW

15  42.56.070(1).

16    Defendants concede that the Complaint describes Plaintiffs' PRA request, which is

17  attached as an exhibit to the Complaint, but Defendants argue that the Complaint fails to

18  articulate how the District's responses were deficient or which records were destroyed.

19    Plaintiffs argue that this cause of action could have been brought as a motion claiming to

20  have been denied the opportunity to inspect or copy a public record, shifting the burden to

21  Defendants to show the adequacy of their response, but in this case, Defendants have made no

22  effort to defend their response to Plaintiffs' PRA request.

23

24

ORDER ON DEFENDANTS' MOTION TO
DISMISS PURSUANT TO FED. R. CIV. P.
12(B)(6)- 17

1         The Complaint attaches an exhibit to the Complaint that allegedly is a copy of a PRA

2   request made by Plaintiffs to Defendants. Dkt. 1-2 at ¶5.111. Defendants allegedly failed to

3   timely respond to the request, illegally denied Plaintiffs' right to inspect certain documents, and

4   destroyed documents. *Id*. at ¶¶5.113-5.119. Especially in this case, where the Complaint

5   incorporates Plaintiffs' PRA request, from which much can be inferred, such as the date of the

6   PRA request and the scope of its content, the Complaint alleges a plausible PRA cause of action.

7   Plaintiffs' description of the inadequacies of Defendants' response is sufficient for purposes of

8   the Complaint. The adequacy of Defendants' response to the PRA request is an issue reserved for

9   a motion for summary judgment. *See, e.g., Neighborhood All. of Spokane Cty. v. Cty. of*

10  *Spokane*, 172 Wn. 2d 702, 714–15 (2011). *Accord, e.g.,  Oglesby v. U.S. Dep't of Army*, 920

11  F.2d 57, 68 (9th Cir.1990).  As to this cause of action, Defendants' motion should be denied.

12                                        \*

13        Plaintiffs' Complaint is unnecessarily lengthy. Much of the Complaint detracts from its

14  basic function, namely, to serve to put the parties on notice of the plaintiff's claims. The

15  amended complaint, if any, should strive to be more concise—a short and plain statement

16  showing that Plaintiffs are entitled to relief. Fed. R. Civ. P. 8(a)(2). An amended complaint

17  should allege claims individually, not as groups of claims. For each claim, an amended

18  complaint should enumerate which plaintiffs allege that claim against which defendants, and it

19  should allege the basic facts connecting the claim to its elements, because a complaint fails to

20  state a claim where it only makes "naked assertion[s]" devoid of "further factual enhancement."

21  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008), quoting *Twombly*, 550 U.S. at 557. On the other

22  hand, lengthy recitations of evidentiary allegations are not required.

23

24

1    The Court recommends that any amended complaint include a re-write of all claims,

2    including those that have not been dismissed by this Order.

3    * * *

4    Therefore, Defendants' Request for Judicial Notice (Dkt. 7) is GRANTED, and it is

5    hereby **ORDERED** that Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

6    (Dkt. 6) is GRANTED IN PART and DENIED IN PART as follows:

7

8    (1) As to Plaintiffs' First Cause of Action under 42 U.S.C. § 1983, Defendants' motion is
     denied as to Plaintiffs' Claims Against District Based on Official Policy, Practice, or
9    Custom. The motion is otherwise granted. All other claims are dismissed without
     prejudice with leave to amend.

10   (2) As to Plaintiffs' Second Cause of Action for Abuse of Process, Defendants' motion is
     granted. All claims are dismissed.
11

12   (3) As to Plaintiffs' Third Cause of Action for Invasion of Privacy/False
     Light/Defamation, Defendants' motion is denied.

13   (4) As to Plaintiffs' Fourth Cause of Action for Constructive Discharge in Violation of
     Public Policy, Defendants' motion is denied as to Plaintiff Kathy McGatlin. The
14   motion is otherwise granted. All other claims are dismissed.

15   (5) As to Plaintiffs' Fifth Cause of Action for Breach of Contract, Defendants' motion is
     denied.
16

17   (6) As to Plaintiffs' Sixth Cause of Action for Outrage, Defendants' motion is denied.

     (7) As to Plaintiffs' Seventh Cause of Action for violations of the Washington Law
18   Against Discrimination, Defendants' motion is granted. These claims are dismissed
     without prejudice with leave to amend.
19

20   (8) As to Plaintiffs' Eighth Cause of Action for violations of the Public Records Act,
     Defendants' motion is denied.

21   (9) Any amended complaint should be filed on or before September 2, 2016.

22   The Clerk is directed to send uncertified copies of this Order to all counsel of record and

23   to any party appearing *pro se* at said party's last known address.

24

ORDER ON DEFENDANTS' MOTION TO
DISMISS PURSUANT TO FED. R. CIV. P.
12(B)(6)- 19

1    Dated this 29th day of July, 2016.

2

3

4                              ROBERT J. BRYAN
                               United States District Judge
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER ON DEFENDANTS' MOTION TO
DISMISS PURSUANT TO FED. R. CIV. P.
12(B)(6)- 20